Plaintiff instituted this suit to recover $1,500 from the defendant insurance company. He alleged that on November 1, 1937, the defendant company issued a policy of insurance to him against both death and accident; and that it agreed to pay him the sum of $500 for the loss of sight of either eye by accident. That on or about the 2nd day of December, 1938, he was riding in an automobile owned and operated by Lucius Keel and that owing to some unforeseen and unknown reason the said Keel turned the car over about two miles north of Rodessa, Louisiana, on the Shreveport-Texarkana highway.
Plaintiff further alleged:
"5. That as a result of said accident and at the time of said accident, a piece of the windshield of the said car became located in petitioner's right eye.
"6. That almost immediately thereafter or during the month of December, 1938, your petitioner lost the complete use and sight of his said right eye and that the complete irrecoverable loss of said eye was caused solely and entirely from the accident described above, namely a piece of the windshield sticking into your petitioner's eye at that time.
"7. That solely because of said accident over which your petitioner had no control, the car which turned over had a broken windshield, several bent fenders, etc., caused by the said accident.
"8. That sometime during the month of December, 1938, your petitioner spoke first to the agent who collected his insurance premiums and then later to the manager of the Shreveport office of defendant company, Mr. H.E. Skinner, or someone who represented themselves to be the manager and asked to be allowed to file a claim for the recovery under the policy.
"9. That said manager informed your petitioner that the company had never paid an accident claim during the time that he had been in the Shreveport office, although they had thousands of local accident policies in force in this vicinity, and that they did not have claim blanks for accident or health claims, but that he would turn the claim into his company and see that it was taken care of.
"10. Your petitioner asked for an examination by a doctor at that time and also asked for medical aid and was told by the defendant company's agents that it would not be necessary to have a doctor's statement.
"11. That at frequent intervals after the first of January, 1939, your petitioner continued to take the matter up with the said company and was told first that the company would not pay unless he lost the sight of both eyes, and after your petitioner took the matter up with the company's manager again, he told your petitioner that he would not accept a claim unless the policy was turned in and refused your petitioner a duplicate copy while the policy was being sent in.
"12. That about this time your petitioner decided that he had better consult a lawyer and did so, and had his lawyer take the matter up with the company's representatives.
"13. That when the company's representatives found out that your petitioner was going to employ a lawyer, the said Skinner or someone else representing himself as manager of the defendant company, told your petitioner that he would have to have a signed statement from him before he could collect on the policy and presented a statement to him to sign, he refused to read it to your petitioner or to allow your petitioner to read it himself and your petitioner has been informed and therefore alleges that some of the allegations contained in the said statement are contrary to the facts and have been written by the company agent for the sole purpose of defeating this claim and that a fraud was practiced upon petitioner, like the statement made to him by the agent that he could not recover unless he lost the sight of both eyes, for the purpose of taking advantage of his ignorance and extreme youth.
"14. That petitioner, then through his attorney, Robert J. Newson, of Shreveport, Louisiana, demanded of the company's agent that he be given a claim blank and a medical examination.
"15. That defendant company through its said representatives refused to give *Page 145 
your petitioner a medical examination but that he did write to the home office and secure an accident claim blank which was filled in and sent to defendant company by your petitioner.
"16. That defendant company then stated to your petitioner, through its agent, that they would not pay the claim unless your petitioner bore the expenses of a reputable eye doctor and sent in a medical report.
"17. That your petitioner's attorney then procured the services of Dr. L.W. Gorton, a recognized eye specialist of the city of Shreveport, and asked the company if his examination would be satisfactory.
"18. Upon receiving the reply that it would be, your petitioner employed the said Dr. Gorton at his own expense to make a thorough examination and make a report upon the condition of his eye.
"19. That the report was turned into defendant company and shows that your petitioner has lost the complete use of his said right eye, which said doctor's report has never been returned to your petitioner and that the defendant should be ordered to file same with their answer to this suit.
"20. That the loss of the sight of petitioner's eye is total and irrecoverable as far as your petitioner is concerned and that there is a visible scar on the surface of his eye which can be seen at some distance away from him, such injury being the result of said accident.
"21. That the defendant company, upon receiving this report, rejected the claim of your petitioner in a letter addressed to your petitioner's attorney under date of May 11th, which said letter is attached hereto and made a part of this petition.
"22. That under the said contract of insurance attached hereto and made a part hereof, the defendant company agreed to pay your petitioner the sum of $500.00, in case your petitioner lost the sight of either eye as a result of an accident while riding in an automobile on a public highway and that defendant company is now indebted unto your petitioner for double this amount, the above premises and the laws of the State of Louisiana considered, and in addition thereto, reasonable attorney's fees, which are hereby fixed at not less than $500.00.
"23. That in the event that any of the policy provisions can be construed against your petitioner's claim for recovery, petitioner further alleges that a gross fraud has been practiced upon him by the defendant company through its authorized agents and that representations have been made to him by said agents telling him that he could recover from it in such an accident as he had, and that these representations were made to him for the purpose of procuring premiums for the said defendant company and with the idea of taking advantage of his ignorance and extreme youth.
"24. That your petitioner has had some medical attention, all that he was able to afford in his impoverished condition and, having been unable to employ other medical aid, he is unable to more specifically describe his injuries.
"25. That your petitioner is unable because of his poverty and lack of means to advance the court costs or to obtain a bond for such costs and is entitled to prosecute this suit in forma pauperis, he having been a citizen of Caddo Parish, Louisiana, for the past three years.
"Wherefore, petitioner prays that the Southern Life Health Insurance Company of Birmingham, Alabama, defendant herein, be cited to appear, according to law, and answer this petition, and, after all legal delays and due proceedings had, there be judgment rendered in favor of your petitioner, and against the defendant, The Southern Life Health Insurance Company, in the full sum of $1500.00, plus 5% per annum interest from the date of judicial demand until paid and for all costs of this suit.
"Petitioner further prays that he be allowed to file this suit in forma pauperis and for all necessary orders, general and equitable relief."
The following motion for a bill of particulars was filed:
"Now into court, through undersigned counsel, comes the defendant in the above numbered and entitled cause and suggests to the court, —
"1. That the plaintiff, upon advice of his counsel, has refused to divulge any facts or information connected with the alleged accident or his injuries, and therefore, in view of the limitations and conditions of the policy sued upon, plaintiff herein should be required to set forth the make of automobile alleged owned and operated by Lucius Keel, the model and type of car, the State which issued a license for said car to be operated during the year 1938, *Page 146 
the license number or the place where said car was registered.
"2. He should furnish the place or the garage where said car was taken after the alleged accident or the garage or person who picked up said car after said accident. Said plaintiff should be required to furnish approximately the time of day that said accident occurred.
"Your appearer shows that the above information is required and necessary so that the defendant will have an opportunity to investigate to see if an accident did occur, and obtain witnesses who were present in its behalf.
"Wherefore, premises considered, appearer prays that after hearing had, this plea be maintained and plaintiff ordered to furnish the information as hereinabove set forth.
"Further prays that upon the failure to furnish said information within a time to be fixed by the court, the suit be dismissed at plaintiff's costs.
"Further prays for needful orders, general and equitable relief."
And answered as follows:
"The supplemental and amended petition of M.G. Campbell, plaintiff in the above numbered and entitled cause, with respect represents:
"1. That in obedience to the order of the court your petitioner amends his original petition as follows:
"2. That the car in which he was riding at the time of the accident was a 1935 V-8 Tudor Sedan with 1938 Texas license on it, which said license was issued at Houston, Texas, and the number of which your petitioner is unable to obtain.
"3. That the said accident occurred about 3 or 4 P.M., in the afternoon and that the car was not moved by either your petitioner or its owner on account of it being such a total wreck, but that the owner's sister, a woman by the name of Nell Senior Lucius, went to the scene of the accident on account of her brother, the owner, not being able to go, for the purpose of disposing of the car, and that while she was there some man whose name is not known to your petitioner, approached her and offered to buy the car for the parts and that she sold him the car, and that when she left there, the purchaser was tearing the car apart and loading the parts in his truck.
"4. That the said owner's sister is now in California and your petitioner is unable to find out what town she is located in.
"5. That the above information was obtained by your petitioner at a great deal of trouble and expense to himself, in compliance with the order of the court, and he believes it to be correct to the best of his knowledge, information and belief.
"Wherefore, petitioner prays that he be allowed to file this supplemental and amended petition, that the same be served upon the defendant and that in due course there be judgment in his favor and against the defendant, as prayed for in his original petition, and for full, general and equitable relief."
Defendant then answered as follows:
"1. The defendant admits its corporate existence and domicile as alleged in paragraph one, but otherwise denies said paragraph.
"2. Defendant admits issuing two policies as alleged in said paragraph, but avers that policy contracts themselves are the best evidence as to the agreement, otherwise, said paragraph is denied.
"3. Your respondent admits the premiums on said policies were paid up to and including December 2, 1938; otherwise said paragraph 3 is denied.
"4. Your respondent denies the allegations of paragraph 4.
"5. Your respondent denies paragraph 5.
"6. Respondent denies the allegations contained in paragraph 6.
"7. Your respondent denies the allegations contained in paragraph 7.
"8. Your respondent denies the allegations contained in paragraph 8.
"9. Your respondent denies the allegations in paragraph 9.
"10. In answer to paragraph 10, respondent shows that it denies paragraph 10 as written, but avers that sometime around the 19th day of April, 1939, the plaintiff did request your respondent, through its local office, to furnish him with a doctor, which was refused for the reason that your respondent is not under any obligation by virtue of said contract of insurance to furnish medical services, otherwise, your respondent specifically denies the allegations contained in said paragraph.
"11. Your respondent denies paragraph 11, as written, but does show that said defendant *Page 147 
on or about the 19th day of April called at your respondent's local office in Shreveport and interviewed its local manager, but said insured did not have said contract of insurance with him and stated to your respondent's local manager that it was an ordinary life policy and that said agent did advise said plaintiff on or about April 19th, 1939, that under the ordinary life contract, the company was not liable for the loss of one eye, and said contract provided indemnity only for the loss of both eyes.
"12. Your respondent has no knowledge of the facts alleged in paragraph 12, but if there is any allegation of fact, your respondent denies same.
"13. Your respondent shows that on or about the 19th day of April the said plaintiff voluntarily made statements which were reduced to writing and in notarial form, which are contrary to the allegations set forth in said petition; otherwise, your respondent denies all the other allegations contained in said paragraph 13.
"14. Your respondent denies paragraph 14 as written, but does admit delivery of claim blank to plaintiff's attorney.
"15. Respondent admits paragraph 15.
"16. Your respondent denies paragraph 16 as written, but does admit that it advised plaintiff's attorney that it would not consider said claim without medical evidence.
"17. Your respondent admits it has a report from Dr. L.W. Gorton, otherwise said paragraph 17 is denied.
"18. Your respondent has no information as to the allegations set out in paragraph 18; therefore, denies same.
"19. Your respondent admits said report from Dr. Gorton was delivered to it, and upon said reports and other facts your respondent had in its possession, it refused to pay said claim.
"20. Your respondent admits according to the report of Dr. Gorton, there is a scar on the petitioner's right eye, otherwise, said paragraph is denied.
"21. Your respondent admits the allegations in paragraph 21.
"22. In answer to paragraph 22, your respondent shows that said contract of insurance contains the agreements between the plaintiff and the defendant, which are plain and unambiguous, and wherein said paragraph 22 conflicts with the provisions of said policy, your respondent denies said allegations.
"23. Your respondent denies the allegations contained in paragraph 23.
"24. Your respondent has no information as to the facts in said paragraph 24, and therefore denies same.
"25. Your respondent denies paragraph 25.
"26. In answer to the supplemental and amended petition filed herein, your respondent denies paragraphs 1, 2, 3, 4 and 5.
"Further answering said petition, your respondent shows that it specifically denies that the plaintiff had any accident as alleged in said petition or that he lost the sight of said eye at the time it was set forth, and that upon the claim as made by said plaintiff at an unsuspicious time before he had employed counsel, he made a declaration in notarial form stating that he lost said eye on February 15, 1939; and that according to the policy contract, if the said plaintiff did receive the injuries as alleged and the loss of his sight on February 15, 1939, he would not be able to recover any sum for the reason that said contract specifically provides that said loss must occur within 30 days from the date of said injury, which provision your respondent specially pleads in the event it is shown that said plaintiff met with an accident.
"Your respondent further shows that under the terms and conditions, stipulations and agreements contained in said contract, in no event, is the plaintiff entitled to recover any sum whatsoever.
"Wherefore, respondent prays that after trial duly had, the demands of the plaintiff be rejected at his costs.
"Further prays for all needful orders, general and equitable relief."
After hearing the evidence, the lower court rejected plaintiff's demands for the following reasons:
"In our original opinion, which was oral, we held that plaintiff had not given defendant written notice of the alleged accident and injury within 20 days after the accident.
"The plaintiff's testimony is to the effect that he was injured on December 3, 1938, and that nine days after the accident he notified the insurance company by talking with a collector of the company, who gave *Page 148 
plaintiff a slip of paper with the name of the district manager and the location of the office written thereon. J.P. Boyett, the collector, testified that this occurrence happened the first week in April, 1939. But regardless of the time when it happened, there is not a line of testimony in the record showing that any written notice was given the company as required by the policy.
"It is now argued that plaintiff was excused from giving notice because he did not know that he had a policy, the fact being that his brother had taken out the policy and was paying the premium. To hold with plaintiff on this phase of the question, we would have to go counter to plaintiff's own testimony to the effect that he was injured on December 2nd, and nine days later he was making demand on the company; and whether it was in December or in April following, still there is no evidence that notice of injury was given in writing within the 20 days provided in the policy. The only authority of a district office is to receive written notice of the accident. Proof of claim must go to the company at Birmingham, Alabama. The proof of claim was furnished without a doctor's certificate and the local agent or manager notified plaintiff or his attorney, that a doctor's statement must accompany the claim. This was furnished, however, the request for a completion of the claim by furnishing a doctor's statement, which request was made by the local manager, cannot work an estoppel against the defendant, as provided in paragraph 6 on the first page of the policy.
"It appears that when the claim was made out (sometime in April) which was, according to the defendant, on April 19, 1939, the matter was forwarded to Mr. A.L. Kidd, vice President, on April 20, 1939, by the local manager, and between that date and May 11, 1939, the company rejected plaintiff's claim.
"We do not find that plaintiff furnished any written notice of the injury within 20 days after the injury nor do we find that there are any circumstances or facts showing that the Company waived the written notice required by the policy.
"The application for rehearing is overruled."
There is no doubt in our minds as to the correctness of the judgment of the lower court. However, we feel that the lower court was most considerate in rejecting the demands of the plaintiff on the grounds it did. This case bears all the earmarks of a fraudulent case and we are convinced there was no accident on the date, as alleged by plaintiff, and that he did not lose the sight of his eye at that time. We feel sure if a proper investigation be made, it will be found that plaintiff lost the sight of his eye long before the date alleged and possibly before the policy of insurance was taken out by his brother without his knowledge and which covered him.
No reasonable man, much less a court with experience and training, could be expected to believe the conflicting statements made by plaintiff and his alleged companion regarding the accident and location of it, or the manner in which the car was disposed of on the spot the next morning to someone, no one being able to tell to whom it was sold, the amount it brought or anything else, except that the sister of plaintiff's companion sold it and her testimony could not be secured. No information could be furnished regarding the car by which it could be traced or the ownership of it verified. No police officer or other witness was produced to verify plaintiff and his alleged companion's story of the accident, although the car is supposed to have remained at the scene of the accident from early one morning until the next, and plaintiff and his companion fail materially to agree even as to the location of the accident.
Plaintiff's wife testified that he had been living in Shreveport for five or more months before the date of the accident and that his brother, who secured the insurance on him, saw him often, and the brother testified he had not seen plaintiff for a period of five or six months before the accident because plaintiff was living somewhere in Arkansas.
Another unusual feature of this case is that when plaintiff was sent to a reputable eye specialist by his attorney for examination, he was instructed not to give the doctor any information regarding the manner in which he claimed to have lost the sight of his eye and the information desired by the doctor had to be secured by him from plaintiff's attorney who sent him the information by letter.
The entire case smells of fraud.
The judgment of the lower court is affirmed with costs. *Page 149